# UNITED STATES DISTRICT COURT
# DISTRICT OF MARYLAND

| | |
|---|---|
| LINDSAY W. SIKES, JR.,<br><br>    Plaintiff,<br><br>    v.<br><br>CARRIE M. WARD,<br>HOWARD BIERMAN,<br>JACOB GEESING,<br>PRIMA LELE,<br>TAYYABA C. MONOTO,<br>JOSHUA COLEMAN,<br>RICHARD R. GOLDSMITH,<br>LUDEEN McCARTHY-GREEN and<br>ATTORNEY GENERAL OF THE<br>STATE OF MARYLAND BRIAN E. FROSH,<br><br>    Defendants. | Civil Action No. TDC-16-4108 |

## MEMORANDUM OPINION

In 2014, eight Substitute Trustees instituted foreclosure proceedings in the Circuit Court for Montgomery County, Maryland against the residence of Plaintiff Lindsay W. Sikes, Jr. After the Circuit Court authorized a foreclosure sale, Sikes filed a motion to stay the sale and cancel the foreclosure, which the Circuit Court denied without a hearing. The Maryland Court of Special Appeals affirmed that decision. Proceeding *pro se*, Sikes has filed this action pursuant to 42 U.S.C. § 1983 in which he alleges that the Substitute Trustees and Maryland Attorney General Brian E. Frosh violated his due process rights. Sikes further asserts that the Substitute Trustees violated Section 7-113(b) of the Real Property Article of the Maryland Code by canceling his homeowner's insurance.

Pending before the Court are two Motions to Dismiss, one filed by the Substitute Trustees and the other by Attorney General Frosh. Having reviewed the pleadings and the briefs, the Court finds that no hearing is necessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, the Motions are GRANTED.

## BACKGROUND

In May 2014, Defendants Carrie M. Ward, Howard Bierman, Jacob Geesing, Prima Lele, Tayyaba C. Monoto, Joshua Coleman, Richard R. Goldsmith, and Ludeen McCarthy-Green (collectively, the "Substitute Trustees"), in their capacity as Substitute Trustees filed a foreclosure action in the Circuit Court for Montgomery County, Maryland ("Circuit Court") to repossess and sell Sikes's residence. On November 12, 2014, after an unsuccessful mediation session, the Circuit Court authorized the scheduling of a foreclosure sale. On November 26, 2014, Sikes filed a motion, pursuant to Md. Rule 14-211, to stay the sale and dismiss the foreclosure action. In the motion, Sikes argued that the Substitute Trustees could not foreclose on his residence because they had failed to provide the original debt instrument to establish that they had a valid lien on the property. On December 3, 2014, however, the foreclosure sale took place, prior to any ruling by the Circuit Court on Sikes's motion.

The Circuit Court ultimately denied the motion on February 9, 2015 and ratified the foreclosure sale three days later. On appeal to the Maryland Court of Special Appeals, Sikes argued that he was improperly denied a hearing on the motion, as generally required by Md. Rule 14-211, and repeated his contention that the Substitute Trustees had not provided a copy of the original debt instrument, a claim that the Substitute Trustees contended was "plainly false." *Sikes v. Ward*, No. 0027, 2016 WL 1394494, at *1–2 (Md. Ct. Spec. App. Apr. 8, 2016). The Court of Special Appeals affirmed the Circuit Court's decision, concluding that Sikes was not

entitled to a hearing because he filed his motion 19 days late and that, since his motion was untimely, it did not need to address his claim that the Substitute Trustees never provided the original debt instrument. *Id.* at *3–4.

On December 28, 2016, Sikes filed suit in this Court against the Substitute Trustees. On April 7, 2017, he filed an Amended Complaint to add Attorney General Frosh as a defendant. In the Amended Complaint, Sikes alleges pursuant to 42 U.S.C. § 1983 that because the Circuit Court ruled on his motion without holding a hearing, his right to due process of law under the Fifth Amendment to the United States Constitution, and his right to a trial by jury under the Maryland Constitution, were violated. He further asserts that the Substitute Trustees violated Section 7-113(b) of the Real Property Article of the Maryland Code by canceling his homeowner's insurance. Finally, Sikes makes various disjointed statements that he has been subjected to "false arrest[s] and unsubstantial protective orders" that appear unrelated to the foreclosure proceeding. Am. Compl. at 3, ECF No. 29. From the various protective orders, police records, and docket sheets that Sikes has attached to his Amended Complaint, it appears that he has had a tempestuous romantic relationship with a woman not named as a defendant in this action. In his Amended Complaint, Sikes requests an injunction against both her and the State of Maryland to prohibit them from seeking additional protective orders against him without first posting a substantial bond; the expungement of his arrest record; an injunction ordering the State of Maryland or the Circuit Court to write letters to the three major credit bureaus to remove negative reports about his credit; and $7 million in punitive damages from the State of Maryland and the Circuit Court for the alleged false arrests and for "allowing" so many protective orders to be filed against him. Am. Compl. at 3–4.

DISCUSSION

The Substitute Trustees are seeking dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) on the grounds that they are not state actors subject to § 1983, that Sikes's claims are barred by *res judicata* or, in the alternative, by the *Rooker-Feldman* doctrine, and that the Amended Complaint otherwise fails to assert a cognizable claim against them. Attorney General Frosh seeks dismissal under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) on the basis of Eleventh Amendment immunity, the *Rooker-Feldman* doctrine, and Sikes's failure to plead any facts relating to Frosh.

## I. Legal Standards

The Substitute Trustees seek dismissal under Rule 12(b)(6). To defeat a motion to dismiss under Rule 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when the facts pleaded allow "the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Although courts should construe pleadings of self-represented litigants liberally, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), legal conclusions or conclusory statements do not suffice, *Iqbal*, 556 U.S. at 678. The Court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cty.*, 407 F.3d 266, 268 (4th Cir. 2005). Courts may also "consider documents attached to the complaint" if "they are integral to the complaint and authentic." *Sec'y of State for Defence v. Trimble Navigation, Inc.*, 484 F.3d 700, 705 (4th Cir. 2007). When considering a Rule 12(b)(6) motion based on *res judicata*, the courts may "take judicial notice of

4

facts from a prior judicial proceeding" when the defendant's assertion of *res judicata* "raises no disputed issue of fact." *Andrews v. Daw*, 201 F.3d 521, 524 n.1 (4th Cir. 2000).

Attorney General Frosh seeks dismissal under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Rule 12(b)(1) allows a defendant to move for dismissal when it believes that the plaintiff has failed to carry its burden to show that subject matter jurisdiction exists. *Evans v. B.F. Perkins Co., Div. of Standex Int'l Corp.*, 166 F.3d 642, 647 (4th Cir. 1999). Where, as here, the defendant argues that the facts as pleaded are insufficient to establish subject matter jurisdiction, "the Court must accept the allegations as true and construe them in the light most favorable to the plaintiffs." *Beckham v. Nat'l R.R. Passenger Corp.*, 569 F. Supp. 2d 542, 547 (D. Md. 2008).

The United States Court of Appeals for the Fourth Circuit has not definitively stated whether motions to dismiss based on Eleventh Amendment immunity are properly considered under Rule 12(b)(1) or Rule 12(b)(6). *See Andrews*, 201 F.3d at 525 n.2 (noting the lack of clarity in Fourth Circuit cases regarding whether motions to dismiss based on Eleventh Amendment immunity should be considered under Rule 12(b)(1) or 12(b)(6)). *Compare Fulcrum Int'l, Inc. v. Prince George Ctr. I, Inc.*, 503 F. App'x 193, 194 (4th Cir. 2012) (per curiam) ("Assertions of governmental immunity are properly addressed under Fed. R. Civ. P. 12(b)(1), which permits the assertion of the defense of lack of jurisdiction over the subject matter of a claim for relief.") *with Hutto v. S.C. Ret. Sys.*, 773 F.3d 536, 545 (4th Cir. 2014) ("[W]e have often affirmed Rule 12(b)(6) motions to dismiss on the basis of Eleventh Amendment immunity."). This distinction does not matter in this case, as there is no dispute regarding the accuracy of the pleaded allegations, and the Court has limited its consideration to the Amended Complaint and the exhibits attached to it. *See Beckham*, 569 F. Supp. 2d at 547.

5

## II. The Substitute Trustees

The Substitute Trustees seek dismissal of Sikes's § 1983 due process claim against them because they are not state actors and because the doctrine of *res judicata* precludes Sikes's due process claim. They further assert that Sikes has otherwise failed to plead facts that state a plausible claim for relief.

First, Sikes's § 1983 claim that the denial of a hearing violated his constitutional right to due process of law necessarily fails because the Substitute Trustees were not state actors during the foreclosure proceeding. Section 1983 protects individuals from deprivation of their rights under the Constitution and laws of the United States by persons acting "under color of law." 42 U.S.C. § 1983; *Mentavlos v. Anderson*, 249 F.3d 301, 310–11 (4th Cir. 2001) (holding that § 1983 claims are viable only against defendants acting under color of state law). "Like the state-action requirement of the Fourteenth Amendment, the under-color-of-state-law element of § 1983 excludes from its reach 'merely private conduct, no matter how discriminatory or wrongful.'" *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1002 (1982)). Because the Substitute Trustees are private parties who are unaffiliated with any federal, state, or local government entity and who were not acting on behalf of any government, § 1983 does not apply to their conduct. *See Sullivan*, 526 U.S. at 50; *see also Sheard v. Bank of America, N.A.*, No. PJM 10–2963, 2011 WL 3158035, at *2–3 (D. Md. July 25, 2011) (holding that a former homeowner could not assert a § 1983 claim against a bank in a foreclosure action because the bank was not acting under color of state law, but rather was seeking to enforce a private contract between the parties). Thus, the § 1983 claim against the Substitute Trustees must be dismissed.

Second, the claims under § 1983 and the Maryland Constitution arising from the Circuit Court's failure to hold a hearing are also barred by *res judicata*. Also known as claim preclusion, *res judicata* is a legal doctrine that promotes judicial efficiency and the finality of decisions. *In re Microsoft Corp Antitrust Litigation*, 335 F.3d 322, 325 (4th Cir. 2004). Under the doctrine of *res judicata*, a final judgment on the merits in an earlier decision precludes the parties from relitigating issues that were raised or could have been raised during that action. *Pueschel v. United States*, 369 F.3d 345, 354 (4th Cir. 2004). This doctrine applies when there is: (1) a final judgment on the merits in a prior lawsuit; (2) an identity of the cause of action in both the earlier and later suits; and (3) an identity of the parties or their privies in the two suits. *Id.* at 354–55.

A federal court must give preclusive effect to a Maryland court judgment provided that a Maryland court would have done so had the second action been brought before it. *See* 28 U.S.C. § 1738 (2012); *San Remo Hotel v. Cty. of San Francisco*, 545 U.S. 323, 336 (2005). Since Maryland courts utilize the same *res judicata* elements as federal courts, the analysis of Sikes's claim is the same as if his earlier claims had been brought in federal court. *See Anne Arundel Cty. Bd. of Ed. v. Norville*, 887 A.2d 1029, 1037–38 (Md. 2005).

All three of the requirements for *res judicata* are met here. The Maryland Court of Special Appeals provided a final judgment on the merits when it held that Sikes was not entitled to a hearing on his motion to stay the foreclosure sale. *Sikes*, 2016 WL 1394494, at *3–4. There is an identity of parties, because the litigants are the same in both actions: Sikes and the Substitute Trustees. Finally, there is an identity between the two suits because they "'arise out of the same transaction or series of transactions or the same core of operative facts.'" *Pueschel*, 369 F.3d at 355 (quoting *In re Varat Enters., Inc.*, 81 F.3d 1310, 1316 (4th Cir. 1996)).

Although Sikes did not necessarily assert the specific § 1983 and Maryland constitutional claims he asserts here, *res judicata* bars claims that could have been raised during the earlier action. *Pueschel*, 369 F.3d at 354. Where Sikes's federal and state constitutional claims are rooted in the same failure to hold a hearing that Sikes challenged in state court, *res judicata* bars the claims in this Court.

As for Sikes's other claim, Sikes fails to state a plausible basis for relief against the Substitute Trustees. Sikes asserts that the Substitute Trustees violated Section 7-113(b) of the Real Property Article of the Maryland Code by canceling his homeowner's insurance. *See* Md. Code Ann. Real Prop. § 7-113(b)(1)(iii) (2012). Section 7-113(b) provides that "a party claiming the right to possession may not take possession or threaten to take possession of residential property from" an owner, former owner, tenant or other "protected resident" by locking the resident out of the property, willfully diminishing services to the protected resident, or "[t]aking any other action that deprives the protected resident of actual possession," except through lawful process as outlined by the statute. *Id.* The statute thus protects homeowners and tenants from illegal foreclosures and evictions. Sikes, however, has failed to plead sufficient facts demonstrating that the Substitute Trustees used the cancellation of homeowner's insurance as a tactic to deprive him of possession of his residence. He has not shown how the cancellation effectively deprived him of possession of the residence in the way that locking him out or cutting off utility services would have done so. Moreover, Sikes attached to the Amended Complaint a statement showing that his policy was canceled in October or November 2015, almost a year after the foreclosure sale occurred in December 2014 and over seven months after the sale was ratified in February 2015. He therefore had no legal ownership of the property or right to reside

there at the time of the cancellation. Accordingly, Sikes has not stated a plausible claim for relief under Section 7-113(b).

Because the Court finds that Sikes's claims against the Substitute Trustees must be dismissed for the foregoing reasons, the Court need not and does not address the Substitute Trustees' remaining argument that his claims are barred by the *Rooker-Feldman* doctrine.

### III. Attorney General Frosh

In the Amended Complaint, Sikes has added Attorney General Frosh as a defendant. Sikes asserts that the Attorney General is the "proper person" to represent the State of Maryland and the Circuit Court. Pl.'s Mem. Opp'n Mot. Dismiss at 2, ECF No. 54. It therefore appears that his claim is against Attorney General Frosh in his official capacity. At the same time, Sikes asserts in the Amended Complaint that he wants to join the State of Maryland and the Circuit Court as defendants and seeks relief, in the form of injunctive relief and monetary damages, against both.

Whether Sikes's claim against Attorney General Frosh is construed as a suit against the Attorney General in his official capacity, or as a claim against the State of Maryland or the Circuit Court, makes no difference. Suits against state officials in their official capacities are the equivalent of suits against the state itself. *See Will v. Mich. Dep't of Police*, 491 U.S. 58, 71 (1989) ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such it is no different from a suit against the State itself.") (internal citation omitted); *see also Brandon v. Holt*, 469 U.S. 464, 471–72 (1985) (stating that a judgment against a public servant "in his official capacity" imposes liability on the entity represented). Such claims are barred by the Eleventh Amendment to the United States Constitution.

The Eleventh Amendment bars a suit in federal court against a state or against state officials when "the state is the real, substantial party in interest." *Pennhurst State Sch. & Hosp.*

*v. Halderman*, 465 U.S. 89, 100–02 (1984). Eleventh Amendment immunity extends to protect state agents and state instrumentalities from suit, including the Maryland state courts. *Lee-Thomas v. Prince George's Cty. Pub. Sch.*, 666 F.3d 244, 248 (4th Cir. 2012); *Madison v. Wheat*, No. GJH-16-1542, 2016 WL 3546223, at *2 (D. Md. June 23, 2016) (stating that the Circuit Court for Montgomery County, Maryland is a state entity immune from suit under the Eleventh Amendment); *Lemon v. Howard Cty. Cir. Ct.*, No. JFM-15-3164, 2015 WL 7012724, at *1 (D. Md. Nov. 12, 2015) (holding that the Circuit Court for Howard County, Maryland is an arm of the state and protected from suit by the Eleventh Amendment). Such a suit is barred "regardless of whether it seeks damages or injunctive relief." *Pennhurst*, 465 U.S. at 102. There are three exceptions to this limitation: (1) Congress may abrogate the State's sovereign immunity; (2) suits for "prospective injunctive relief against state officials acting in violation of federal law" are permitted, pursuant to *Ex Parte Young*, 209 U.S. 123 (1908); and (3) the State may waive its sovereign immunity. *Lee-Thomas*, 666 F.3d at 249 (quoting *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 437 (2004)).

None of these exceptions apply. Congress did not abrogate the states' sovereign immunity when it enacted § 1983. *Dyer v. Md. State Bd. of Educ.*, 187 F. Supp. 3d 599, 611 & n.16 (D. Md. 2016). Maryland has not waived it sovereign immunity for claims brought in federal court. Md. Code Ann., State Gov't § 12–104(a) (2015); *Dyer*, 187 F. Supp. 3d at 611. Accordingly, the Eleventh Amendment bars Sikes's damages claims against the State of Maryland, the Circuit Court, and Attorney General Frosh and also bars his claims for injunctive relief unless they fall within the *Ex Parte Young* exception.

Under this limited exception, a federal court may issue prospective, injunctive relief against a state official to prevent ongoing violations of federal law, such as when the state officer

is enforcing, or threatening to enforce, an allegedly unconstitutional state law. *See Ex Parte Young*, 209 U.S. at 155–60; *Pennhurst*, 465 U.S. at 102; *McBurney v. Cuccinelli*, 616 F.3d 393, 399 (4th Cir. 2010). The exception is limited to claims against a state official and thus would be unavailable in a claim against the State of Maryland itself, or the Circuit Court. *See Mua v. Maryland*, No. ELH-16-01435, 2017 WL 633392, at *10 (D. Md. Feb. 15, 2017) (concluding that seeking injunctive relief against the State of Maryland, which is not a state official, does not meet the *Ex Parte Young* exception). The *Ex Parte Young* exception also requires the defendant state official to have a "special relation" to the challenged state action. *McBurney*, 616 F.3d at 399. "This 'special relation' requirement ensures that the appropriate party is before the federal court, so as not to interfere with the lawful discretion of state officials" and requires a showing of "*proximity to* and *responsibility for* the challenged state action." *S.C. Wildlife Fed'n v. Limehouse*, 549 F.3d 324, 332–33 (4th Cir. 2008). "General authority to enforce the laws of the state" is insufficient. *Id.* at 333 (quoting *Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316,331 (4th Cir. 2001)).

Here, there is no ongoing or imminent federal constitutional violation arising from the foreclosure proceeding that would warrant prospective injunctive relief. Moreover, the "special relation" requirement has not been met. Attorney General Frosh has neither proximity to nor responsibility for the enforcement of Maryland's foreclosure laws. Nor does he have a special relation to Sikes's vague claims unrelated to the foreclosure proceedings, such as his requests for a bar on future protective orders, letters to credit bureaus seeking removal of negative reports about his credit, and expungement of his arrest record. Thus, where no valid exception to the Eleventh Amendment has been established, any official capacity claim against Frosh must be dismissed. *See, e.g.*, *McBurney*, 616 F.3d at 399–400 (dismissing a suit against the Virginia

Attorney General because he lacked a special relation to enforcement of the Virginia Freedom of Information Act); *see also Harris v. Bailey*, 675 F.2d 614, 617 (4th Cir. 1982) (affirming the dismissal of the Virginia Attorney General as a defendant because the plaintiff sought relief that would be provided by local officials).

Finally, even if Sikes's claims against Attorney General Frosh were construed as claims against him in his personal capacity, they would still be subject to dismissal. Although Eleventh Amendment immunity does not extend to § 1983 claims against state officials sued in their personal capacities, *Hafer v. Melo*, 502 U.S. 21, 30–31 (1991), Sikes has failed to allege any facts showing that Attorney General Frosh personally acted to violate his due process rights. Any personal capacity claims against Attorney General Frosh must therefore be dismissed as well.

Having concluded that the claims against Attorney General Frosh and any potential claims against the State of Maryland or the Circuit Court must be dismissed, the Court need not address Attorney General Frosh's claim that the *Rooker-Feldman* doctrine bars Sikes's suit.

## CONCLUSION

For the foregoing reasons, both the Substitute Trustees' Motion to Dismiss and Attorney General Frosh's Motion to Dismiss are GRANTED. A separate Order shall issue.

Date: December 6, 2017

THEODORE D. CHUANG
United States District Judge